In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00429-CV
_____

IN THE INTEREST OF T.S. AND A.S.

On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 17-09-10731-CV

**MEMORANDUM OPINION**

In three appellate issues, Father challenges the trial court's judgment terminating his parental rights to his children, "Anne" and "Tim."[1] Following a bench trial, which occurred in August 2018, the trial court terminated Father's parental rights to his two children after finding that terminating his rights to them would be in their best interest.[2] In three issues, Father complains there was not

---

[1] To protect the identity of the minor children that are discussed in the opinion, we have used pseudonyms for their names, as well as their parents and other members of their family. *See* Tex. R. App. P. 9.8(a), (b).

[2] *See* Tex. Fam. Code Ann. § 161.001(b) (West Supp. 2018).

enough evidence admitted in the trial to support the trial court's conclusion (1) that he endangered Anne or Tim, (2) that he failed to comply with the provisions of a court-ordered, parenting plan,[3] or (3) that terminating his parental rights to his two children would be in each child's best interest.[4] Because the testimony and other evidence admitted in the trial are sufficient to support the findings that Father challenges in his appeal, we affirm.

## Background

In the spring of 2017, Mother, with her children, left Father. Several months later, she and her children began living with her boyfriend. In September 2017, when Anne was three and Tim was two, the Texas Department of Family and Protective Services opened an investigation to determine who had abused the children while they were living in the boyfriend's home. The Department opened its investigation upon learning that Mother had taken Anne and Tim to the hospital, where they were treated for serious injuries like fractured bones and bruises over their bodies. Given the injuries, the hospital that initially treated the children then transferred them to a hospital where they received a higher level of care. The second hospital placed the children into intensive care.

---

[3] *See id.* § 161.001(b)(1)(E), (O).

[4] *See id.* § 161.001(b)(2).

Two of the Department's investigators who worked on Anne's and Tim's case testified during the trial. The first investigator involved in the case explained that she saw the children on the same day they were treated in the emergency room. The next day, the first investigator contacted Father and informed him that Anne and Tim had been hospitalized because they had suffered serious injuries while living at Mother's boyfriend's home. According to the first investigator, Father became "irate [after] hear[ing] the news." The investigator also testified that during her telephone call with Father, he threatened to harm Mother. The investigator stated that she immediately contacted the police to let them know that Father was coming to the hospital and that he had verbally threatened to harm Mother.

The first investigator explained that over the course of the Department's investigation, Mother told her that when she and Father had lived together, Father shook Anne and Tim to make them stop crying. Mother also told the investigator that Father beat her while the children were present.

On September 6, 2017, the Department sued Mother and Father. In its petition the Department requested that the trial court terminate Mother's and Father's parental rights to Anne and Tim. The day the suit was filed, the trial court signed an emergency temporary order, naming the Department as Anne's and Tim's sole managing conservator. Following a full adversarial hearing in mid-September 2017,

3

the trial court signed a temporary order that sets out the requirements Mother and Father had to meet to have the children returned to their care. The temporary orders required that Mother and Father comply with a parenting plan.

In late August 2018, five days before a trial to the bench occurred, Mother signed an affidavit voluntarily relinquishing her parental rights over Anne and Tim. Six witnesses, including Mother, testified during the trial. While Father appeared through counsel at the trial, he was not there in person and he did not testify in the trial by deposition or by other means, such as a teleconference. There was no evidence in the trial showing that Father caused the injuries that resulted in the hospitalizations that led the Department to sue. When the trial ended, the trial court found that Father engaged in the conduct described in subsections E and O of the Texas Family Code.[5] The court also found that terminating Father's and Mother's parental rights would be in each child's best interest,[6] and it appointed the Department to be each child's managing conservator.

---

[5] *See id*. § 161.001(b)(1)(E), (O).

[6] *See id*. §§ 161.001(b)(2), 161.001(b)(1)(K).

Analysis

A. Standard of Review

In his appeal, Father challenges the legal and factual sufficiency of the evidence on which the trial court relied to terminate his parental rights to Anne and to Tim.[7] To involuntarily terminate a parent's rights, the factfinder must conclude, by clear and convincing evidence, that (1) the parent committed one or more of the prohibited acts or omissions listed in section 161.001(b)(1) of the Family Code, and that (2) terminating the parent's rights to his child is in the child's best interest.[8] Section 161.001(b)(1) currently lists twenty-one grounds authorizing trial courts to terminate a parent-child relationship.[9] When terminating the parent-child relationship is in the child's best interest, the Department need only prove that one of the statutory grounds exist to justify terminating the relationship.[10]

Father raises legal and factual sufficiency claims in the arguments he presented in his brief. In reviewing a legal sufficiency challenge to a trial court's

---

[7] Mother did not appeal from the judgment terminating her rights.

[8] *See id.* § 161.001(b)(1), (b)(2).

[9] *See id.* § 161.001(b)(1).

[10] *See In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014).

decision terminating the parent-child relationship, appellate courts must consider the evidence "'in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'"[11] In doing so, we must assume that the factfinder resolved disputed facts in a manner that favors its finding, if a reasonable factfinder could have done so, and we must also disregard all evidence that a reasonable factfinder could have, by inference, disbelieved or found incredible.[12] Should the appellate court determine that a reasonable factfinder could reasonably form a firm belief or conviction that the matter that must be proven is true, it must conclude that legally sufficient evidence supports the finding that the parent has complained about in the appeal.[13]

In reviewing Father's factual sufficiency arguments, we consider and weigh all the evidence in the record, including disputed and conflicting evidence.[14] "'If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not

---

[11] *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

[12] *In re J.F.C.*, 96 S.W.3d at 266.

[13] *See In re J.L.*, 163 S.W.3d at 85.

[14] *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'"[15] When conducting a factual sufficiency review, the appellate court must give due deference to the factfinder's findings, and it must avoid substituting its own judgment for that of the factfinder.[16]

B. Analysis—Arguments about whether Father's conduct endangered Anne's and Tim's physical or emotional well-being

In his first issue, Father argues the Department failed to prove that he engaged in conduct or knowingly placed Anne and Tim with persons who engaged in conduct that endangered their physical or emotional well-being.[17] Section 161.001(b)(1)(E) authorizes factfinders to consider both a parent's direct and indirect conduct in deciding whether a father knowingly exposed his child to loss, to injury, or to circumstances that jeopardized the child's emotional or physical health.[18]

Under both the legal and factual sufficiency standards of review, we focus on whether the record from the trial included evidence establishing that the child's well-

---

[15] *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 267).

[16] *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[17] Tex. Fam. Code Ann. § 161.001(b)(1)(E).

[18] *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

being was endangered as a "direct result of the parent's conduct, including acts, omissions, or failures to act."[19] Generally, the evidence must show that a parent's acts or conduct that affected his child's well-being were done voluntarily or knowingly, as opposed to accidentally.[20] In deciding if a parent acted knowingly as opposed to accidentally, the factfinder may consider actions and inactions by the parent that affected the child's well-being both before and after the child was born.[21] Under Texas law, "[w]hile endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone."[22] Generally, evidence showing that a parent engaged in conduct that created a life of uncertainty and instability for the child is

---

[19] *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

[20] *See* Tex. Fam. Code. Ann. § 161.001(b)(1)(E).

[21] *In re S.M.*, 389 S.W.3d 483, 491-92 (Tex. App.—El Paso 2012, no pet.).

[22] *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533-34 (Tex. 1987)).

8

the type of conduct from which a factfinder can reasonably infer a parent's conduct endangered the child's physical and emotional well-being.[23]

The first of the two investigators who worked on Anne's and Tim's case testified in the trial that she thought that Father was a "very violent person" based on her investigation in the case. She explained that during her investigation, she learned that Father had a criminal history that involved assaults against people who were members of his family and against people who were not. In deciding whether a parent-child relationship should be terminated, the factfinder may consider evidence of "[d]omestic violence, want of self control, and propensity for violence" "as evidence of endangerment."[24] During the trial, Mother also addressed Father's tendency toward violence. She testified that Father, when she was living with him, "was very abusive to me." For example, she stated that Father assaulted her after Anne and Tim were born and before she left him in the spring of 2017. According to Mother, Father punched her, pushed her, hit her, choked her, and threw her into walls, and this type of conduct occurred while Anne and Tim were present. Mother

---

[23] *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

[24] *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

testified that after she separated from Father, Father told her stepmother that he was going to kill or hurt Mother. Mother explained that she obtained a protective order against Father because of Father's threats. She also stated that Father never took care of the children while she was living with him, and she felt that her children did not need to be around someone with Father's violent traits.

The court-appointed special advocate testified in the trial. She explained that she met with Father during the Department's investigation into Anne's and Tim's case. She addressed Father's behavior during her testimony, explaining that she was concerned about the children based on her perception of Father's "erratic and aggressive behavior." A Department caseworker, who worked with Mother and Father on their parenting plans, testified that Father sent her threatening text messages. The caseworker also testified that Father cursed her during phone calls, but that he never threatened her personally with harm. A community-supervision officer from Brazos County testified that Father had been under her supervision since 2014. According to the officer, on more than one occasion, Father told her that he was an FBI agent. The officer also stated that Father "sent [her] an e-mail [ ] saying that I'm going to take down the President of this country." During her testimony, she explained that she was concerned about Father's mental health and that "[Father] is a threat to society."

There was also evidence admitted during the trial showing that Father had a long-term history of abusing drugs. A parent's use of drugs and its effect on the parent's ability to raise a child in an environment that threatens the child's well-being "may qualify as an endangering course of conduct."[25] "Because [drug use] exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under [subsection E]."[26]

According to the testimony given by the second of the Department's investigators who worked on Anne's and Tim's case, Father admitted to having a history of substance abuse involving the use of marijuana, methamphetamine, and prescription medications. Father told her that he began using illegal substances when he was about sixteen years old. Mother also testified about Father's drug use. Mother testified that when she and Father lived together, she observed Father "under the influence a lot." According to Mother, Father was often under the influence of illegal substances while their children were present. The testimony in the trial reveals that after the Department sued, Father took only one of fourteen court-ordered drug tests. In the test the Department obtained, Father tested positive for both marijuana and

---

[25] *See In re J.O.A.*, 283 S.W.3d at 345 (citing *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.)).

[26] *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

methamphetamine. The Department also established that Father did not complete a drug assessment class, a requirement based on Father's court-ordered, parenting plan.

The testimony in the trial also addressed Father's criminal behavior after the Department filed suit. Under Texas law, "[e]vidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that endangered the well-being of the child."[27] There is testimony in the record showing that Father was jailed and charged with assaults that did not involve family members during a large portion of the time after the Department filed suit. While a parent's imprisonment alone does not constitute an endangering course of conduct, a factfinder may weigh it, along with the other relevant evidence admitted during trial, when deciding whether the parent endangered the child's well-being.[28]

The testimony in the trial shows that Father's history of criminal behavior dates to 2012. The Department's investigation revealed that Father was placed on community supervision following a 2012 felony offense for retaliating against the

---

[27] *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied.) (citing *In re S.R.*, 452 S.W.3d at 360).

[28] *In re S.M.*, 389 S.W.3d at 492.

police officer that arrested him. The testimony of Father's probation officer shows that Father violated the conditions of his community supervision by being charged with two crimes, threatening to harm Anne and Tim's maternal grandmother and aggravated assault, an assault that involved two women who are not members of Father's family.

Given the evidence before the trial court, we find that a reasonable factfinder could have formed a firm belief or conviction that Father engaged in conduct that endangered Anne's and Tim's physical or emotional well-being. Because the evidence is legally and factually sufficient to support the trial court's finding that Father violated the endangerment provision in subsection (E), we overrule Father's first issue.[29]

C. Analysis—Anne's and Tim's Best Interest

In his third issue, Father argues the record fails to show that terminating his parental rights to Anne and Tim is in their best interest. In a parental-rights

---

[29] We need not address Father's second issue, which challenges whether the evidence supports the trial court's finding that he violated his parenting plan, to resolve the appeal. *See* Tex. R. App. P. 47.1 (requiring the appellate court's opinion to address each issue necessary to the resolution of the appeal). Under Texas law, evidence sufficient to support a finding that a parent violated any one of the twenty-one statutory grounds authorizing the termination of a parent's rights, when coupled with a best-interest finding, authorizes the trial court to render a judgment terminating a parent-child relationship. *See In re S.M.R.* 434 S.W.3d at 580.

termination case, the Department must establish by clear and convincing evidence that terminating a parent's rights to his child is in the child's best interest.[30] "In determining whether the evidence is legally sufficient to support a best-interest finding, we 'consider the evidence that supports a deemed finding regarding best interest and the undisputed evidence,' and ignore evidence a fact-finder could reasonably disbelieve."[31] There is a "rebuttable presumption that the appointment of the parents of a child as joint managing conservators" will serve the child's best interest.[32] That said, courts must also presume that a prompt and permanent placement of a child in a safe environment is in the child's best interest.[33] In reviewing a best-interest finding, we consider the nine non-exhaustive factors identified by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[34]

---

[30] Tex. Fam. Code Ann. § 161.001(b)(2); *see also In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

[31] *In re E.N.C.*, 384 S.W.3d at 807 (quoting *J.F.C.*, 96 S.W.3d at 268).

[32] Tex. Fam. Code Ann. § 153.131(b) (West 2014); *see also In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (noting that a "strong presumption" exists favoring keeping a child with its parent).

[33] Tex. Fam. Code Ann. § 263.307(a) (West Supp. 2018).

[34] In *Holley*, the Texas Supreme Court applied these factors in reviewing a best-interest finding:

We have already explained that the evidence in the trial shows that Father had a history of criminal behavior and a history of substance abuse. During the trial, Mother testified that Father did little to care for the children when she lived with him. According to Mother, Father was often under the influence of illegal drugs. Mother also testified that Father assaulted her while the children were present. The evidence also shows that Father had little contact with the children after the Department removed the children because he was in and out of jail. The trial court

---

     • the child's desires;

     • the child's emotional and physical needs, now and in the future;

     • the emotional and physical danger to the child, now and in the future;

     • the parenting abilities of the parties seeking custody;

     • the programs available to assist the parties seeking custody;

     • the plans for the child by the parties seeking custody;

     • the stability of the home or the proposed placement;

     • the parent's acts or omissions, which may indicate that the existing parent-child relationship is improper;

     • any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

15

also heard testimony that Anne and Tim have special needs, and that their needs were being met by their respective foster parents. The court-appointed special advocate testified that Anne and Tim are in stable foster homes, that she has visited the homes, and that she thought Anne and Tim were doing "very, very, very well." From the evidence relevant to Father's propensity for violence, his long-term substance abuse, the fact that he has been in and out of jail, and that he never took much of a role in parenting his children, the trial court could reasonably conclude that Father simply does not have the ability or skills required to adequately care for two children with special needs.

As discussed earlier, the trial court heard testimony showing that Father has a propensity for violence, that he has substance abuse issues involving multiple illegal drugs, and that he has a history of criminal behavior, and that these issues all have interfered with his ability to act as a full-time parent for either Anne or Tim. There is also testimony in the record showing that Father cannot currently provide the children with a stable place to live, and that Father does not have a history of having a stable job. Given the testimony, we conclude the evidence before the trial court is

legally and factually sufficient to support the trial court's best-interest finding.[35] We

overrule Father's third issue.

### Conclusion

The trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 28, 2019
Opinion Delivered March 7, 2019

Before Kreger, Horton and Johnson, JJ.

---

[35] *See In re J.F.C.* 96 S.W.3d at 266 (explaining that the appellate court's analysis should determine whether the factfinder, under a clear and convincing standard of proof, could have formed a firm belief or conviction about the Department's claims).